UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE DEONE DAVIDSON,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:19-CV-00099<br><br>ORDER ON SOCIAL SECURITY APPEAL |

Claimant Diane Davidson seeks judicial review of a denial by the Social Security Administration ("SSA") of her application for disability insurance benefits.[1] ECF No. 14. She alleges that the SSA Administrative Law Judge ("ALJ") erred (1) in her initial, threshold assessment of the severity of claimant's mental impairments, (2) in considering the opinions of various doctors, and (3) in evaluating claimant's own testimony about her pain and other symptoms. We heard argument from the parties on January 31, 2020. Having reviewed the record, administrative transcript, briefs of the parties, and applicable law, and having considered arguments raised at the hearing, we will remand this matter for further consideration by the ALJ.

Claimant argues that the ALJ erred in setting aside her mental impairments at what is known as "Step 2" of the five-step disability-determining process—a threshold step at which the ALJ determines whether an impairment is "severe." Step 2 "is a de minimis screening device

---

[1] The parties have consented to entry of final judgment by a U.S. Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the U.S. Court of Appeals for the Ninth Circuit.

1

[used] to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (internal quotation omitted). "An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id.* at 686. This is a low threshold.

Claimant was diagnosed with depression and anxiety, had difficulties with social interactions, and displayed management problems and aggressive behavior. AR 352, 1091, 1153, 653, 1281-82. Her symptoms, even with treatment, appear to have included panic attacks. *See* AR 24 (summarizing opinion of psychiatrist Grace Marian and noting that "claimant was reportedly experiencing fewer panic attacks"). The ALJ acknowledged that claimant had "a long history of being treated for [mental impairments] with psychotropic medications." AR 25.

Oral argument focused on the ALJ's evaluation, at Step 2, of the opinion of Dr. Ekram Michiel, a psychiatrist who, acting as a consulting examiner, evaluated claimant for depression, panic attacks, and post-traumatic stress disorder, and who diagnosed her with "major depressive disorder, recurrent, without psychotic features." Dr. Michiel found claimant's mental impairments serious enough that he concluded she was "unable to maintain attention and concentration to carry out simple job instructions." AR 1158. Using a check-box portion of a form, Dr. Michiel noted that claimant had "marked" impairment in her ability to (1) "understand and remember complex instructions," (2) "carry out complex instructions," and (3) "make judgments on complex work-related decisions"—and identified certain other moderate and mild impairments.

If Dr. Michiel's opinion were credited, SSA concedes that claimant's impairments would have to be considered severe. However, the ALJ gave Dr. Michiel's opinion "discounted weight"—apparently rejecting it. An ALJ's decision to reject the contradicted opinion of a doctor must be supported by "specific and legitimate" reasons.[2] Accordingly, on appeal, we evaluate the reasons given by the ALJ for discounting Dr. Michiel's opinion and ask whether they met this

---

[2] Dr. Michiel's opinion was contradicted by the opinion of Dr. Amado. If Dr. Michiel's opinion had not been contradicted, Ninth Circuit precedent would require the ALJ to articulate "clear and convincing" reasons for rejecting it. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

test.

In significant part—perhaps entirely—the ALJ discounted Dr. Michiel's opinion based on its timing. The ALJ wrote that Dr. Michiel's opinion was "entitled to discounted weight because it is for a period six months beyond the date last insured." This reason is not legitimate. Although the timing of a medical opinion certainly matters, simply pointing to a six-month gap between the last-insured date and a doctor's evaluation does not justify rejecting that opinion where there is no reason to think that claimant's condition would have worsened during that time. *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (holding that the ALJ erred in discounting a doctor's report based on timing where the "report was completed *several months* after [claimant's] last insured date" (emphasis added), and noting that the Ninth Circuit "has specifically held that 'medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition'" (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988))); *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) ("Absent a reason to think [claimant] experienced a major symptom change in the three months" between observations of a lay witness and the ending of the insured period, "it is a fair and reasonable inference that the symptoms [the witness] observed were substantially similar to the symptoms [claimant] experienced before" the last-insured date.).[3] Here, claimant's mental impairments appear to be long-lasting and neither party identified any reason to think that her condition would have worsened in the six months before Dr. Michiel's evaluation.[4]

The Commissioner argues that the ALJ also relied on inconsistencies in Dr. Michiel's opinion as a basis for discounting it.[5] This raises a potentially difficult question of what might be

---

[3] Factual differences—such as a longer gap in time, a different condition, or some identified basis to expect an improvement in the relevant impairment—could lead to a different outcome. *See Lombardo v. Schweiker*, 749 F.2d 565, 567 (9th Cir. 1984) (finding no error where an ALJ disregarded the opinion of a psychiatrist who examined claimant one and a half years after the expiration of insured status).

[4] At oral argument, counsel for the Commissioner pointed to claimant's divorce as a possible justification for declining mental state, but the record indicates that claimant's divorce came roughly five years prior to Dr. Michiel's examination.

[5] The ALJ further stated that she gave "little weight" to Dr. Michiel's estimate that claimant had a 48 Global Assessment of Functioning ("GAF") score and commented that GAF scores are "subjective" and "represent[t] only a snapshot of the claimant's functioning." AR 25. We do not

called linkage—the degree of connection required between the ALJ's explicit rejection of a medical opinion and additional statements in the ALJ's opinion, not explicitly linked to the rejection but arguably supporting it.  Here, although the ALJ explicitly cited only timing as her basis for discounting Dr. Michiel's opinion, she also identified a portion of the doctor's opinion that she found to be "internally inconsistent with the [ALJ's] conclusions regarding impaired cognition."  The ALJ's comments regarding the purported internal inconsistency preceded the ALJ's explicit justification for discounting Dr. Michiel's opinion by only a few lines of text, and the Commissioner argues that we can fairly infer that the ALJ discounted Dr. Michiel's opinion in part on this basis.  *See Magallanes v. Bowen*, 881 F.2d 747, 755 ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").  Claimant disagrees, arguing that we would fall short of our duties under the Administrative Procedures Act to conduct judicial review on the record and would also run afoul of Ninth Circuit precedent, *see Reddick v. Chater*, 157 F.3d 715, 725, if we were to look beyond the reasons explicitly linked by the ALJ to the weight accorded a medical opinion.

      Doubtless there are times when linkage is too weak and also times when inferences can legitimately be drawn to connect a statement in an ALJ's opinion to a somewhat disconnected decision to discount a medical opinion.  We need not determine where on the spectrum this case falls, for the simple reason that the purported inconsistency identified by the ALJ here falls apart on inspection: there is no inconsistency between Dr. Michiel's observation that claimant "is able to handle her own funds" and his separate statement that she could not "maintain attention and concentration to carry out simple job instructions."  AR 1158.  These are different things; the inability to carry out job instructions is not in significant tension with an ability to handle one's own funds.  *See Berkebile v. Colvin*, No. 1:14-CV-01530-BAM, 2016 WL 880851, at *6 (E.D. Cal. Mar. 8, 2016), *aff'd sub nom. Berkebile v. Berryhill*, 714 F. App'x 649 (9th Cir. 2017) ("She was able to . . . perform[] simple job instructions, but . . . was unable to handle her own funds because of her dependence on marijuana."); *Fitzgerald v. Colvin*, No. 1:14-CV-00052-JLT, 2014

---

understand the ALJ to be relying on this general critique of GAF scores as a basis for setting aside Dr. Michiel's larger opinion.

4

WL 5463932, at *2-3 (E.D. Cal. Oct. 27, 2014) (same); *McDaniel v. Astrue*, No. 1:11-CV-00880-SMS, 2012 WL 5210773, at *4 (E.D. Cal. Oct. 22, 2012) ("Plaintiff was able to . . . carry out simple job instructions, [but] Plaintiff's alcohol use rendered him unable to handle funds in his own interest.").

We thus determine that the ALJ's opinion was legally flawed or unsupported by substantial evidence in that (1) it did not provide specific and legitimate reasons for discounting the opinion of Dr. Michiel, and, therefore, (2) it erred in finding claimant's mental impairments to be non-severe. The Commissioner urges that any Step 2 error was harmless, since the ALJ carried the disability examination process through all five steps. Indeed, error at Step 2 sometimes is harmless, such as when an ALJ continues the consideration of an impairment erroneously found to be non-severe throughout her analysis and incorporates it into the claimant's residual functional capacity determination. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding Step 2 error to find claimant's bursitis condition to be severe harmless where "[t]he ALJ extensively discussed Lewis's bursitis at Step 4 of the analysis"). Here, however, after clearing Step 2, the ALJ considered only claimant's physical impairments, truncating all discussion of mental impairments at Step 2. Thus, the ALJ's subsequent analysis did not render harmless the Step 2 error.

We need not reach the other issues raised by claimant. For the reasons stated in this opinion, we remand this case for further consideration by SSA. The clerk of court is directed (1) to enter judgment in favor of claimant Diane Deone Davidson and against defendant Commissioner of Social Security, and (2) to close this case.

IT IS SO ORDERED.

Dated: February 9, 2020

UNITED STATES MAGISTRATE JUDGE

No. 200.

5